UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

VIRGIL EUGENE GRIFFIN,

Plaintiff,

v.                          CAUSE NO. 3:22-CV-685-DRL-MGG

NANCY MARTHAKIS *et al.*,

Defendants.

OPINION AND ORDER

Virgil Eugene Griffin, a prisoner without a lawyer, filed a complaint against eleven defendants under 42 U.S.C. § 1983. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotations and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

Mr. Griffin states that, on December 28, 2021, he was transported from Indiana State Prison (ISP) to the hospital for surgery to repair his thumb. ECF 1 at 4. The surgery consisted of cutting the bones in his thumb apart and inserting metal pins and a plate to keep the bones in place. *Id*. After the surgery, he was placed in a cast and told he would have a significant amount of pain once the medication wore off. *Id*. Later that day, when Mr. Griffin returned to ISP, Dr. Nancy Marthakis prescribed 700 mg (two 350 mg pills) of

Tylenol to be taken twice daily for six days. *Id*. However, by that night, Mr. Griffin had excruciating hand pain. *Id*.

The following day, on December 29, 2021, Mr. Griffin told a nurse, who was passing out medication in his housing unit, that he was in severe pain. *Id*. She told him he should have been given something stronger than Tylenol and submitted a healthcare request form on his behalf noting Tylenol was not strong enough to control his pain. *Id*.

On December 30, 2021, Health Services Administrator (HSA) Sheri Fritter checked Mr. Griffin's cast and fingers. *Id*. at 5. He told HSA Fritter that Tylenol was ineffective, but she disregarded his complaints. *Id*.

On January 4, 2022, Mr. Griffin saw Nurse Jennifer Burrell for a cast check. *Id*. He was in severe pain and the gauze in his cast had become soiled in blood and dirt to such an extent that he cracked open his cast to clean his wound to keep it from becoming infected. *Id*. When Mr. Griffin told Nurse Burrell about his unsanitary cast and need for stronger pain medication, she disregarded his concerns and told him to keep his cast on regardless of its condition. *Id*. Nurse Burrell discussed Mr. Griffin's medication concerns with Dr. Marthakis, but she did not change his medication. *Id*.

On January 10, 2022, Nurse Turner checked Mr. Griffin's cast. *Id*. He told her that the cast was causing him pain and he needed gauze to cushion the cast and protect his wound from infection. *Id*. Nurse Turner would not provide him with gauze and then stormed away from Mr. Griffin. *Id*. at 5-6. Mr. Griffin told Sergeant Wood, the custody officer who supervised the medical station, he needed to speak with a responsible medical professional because he needed gauze for his cast. *Id*. at 6. Sergeant Wood told

2

Mr. Griffin that Nurse Turner was a responsible medical professional and told him to leave the medical station. *Id*. Mr. Griffin then became infuriated to the "point of near rage." *Id*.

At some point, Mr. Griffin had a follow-up visit at the hospital with Dr. Brian Christie, the orthopedic surgeon who performed his thumb surgery. *Id*. After Mr. Griffin explained his medication and cast concerns, Dr. Christie ordered a padded splint and prescribed Tramadol. *Id*. When Mr. Griffin returned to ISP, Dr. Marthakis and Nurse Burrell continued to give him Tylenol, instead of Tramadol. *Id*.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a

substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotations and citations omitted). A mere disagreement with medical professionals about the appropriate course of treatment does not establish deliberate indifference, nor does negligence or even medical malpractice. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994) ("Obduracy and wantonness rather than inadvertence or mere negligence characterize conduct prohibited by the Eighth Amendment."); *Estelle*, 429 U.S. at 106 (Negligence or medical malpractice do not constitute deliberate indifference). Even incompetence does not state a claim for deliberate indifference. *Minix v. Canarecci*, 597 F.3d 824, 831-32 (7th Cir. 2010). Furthermore, inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

Mr. Griffin has sued HSA Fritter, Dr. Marthakis, Nurse Burrell, Nurse Turner, and Sergeant Wood alleging they were deliberately indifferent when they failed to provide him with effective pain medication and gauze for his cast following his December 28, 2021, thumb surgery. ECF 1 at 11. He asserts the medical treatment was inappropriate and constituted cruel and unusual punishment. *Id*.

The factual allegations in Mr. Griffin's complaint do not permit a plausible inference that HSA Fritter, Dr. Marthakis, Nurse Burrell, and Nurse Turner were deliberately indifferent to his pain following his thumb surgery. Though Mr. Griffin may not have agreed with the decision about his pain medication, he was not "entitled to

4

demand specific care [nor] entitled to the best care possible." *Forbes*, 112 F.3d at 267. Mr. Griffin has not pleaded facts from which it can plausibly be inferred that these four defendants did not exercise their medical judgment when treating Mr. Griffin's pain. At best, the complaint describes negligence. He has not stated claims against these four defendants.

To the extent Mr. Griffin asserts Sergeant Wood denied him pain medication, he has not pled facts that show Sergeant Wood was involved in decisions regarding his medication. A lawsuit against an individual under 42 U.S.C. § 1983 requires "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003). Sergeant Wood's only involvement with Mr. Griffin pertained to directing Mr. Griffin to leave the medical station after he became argumentative with Nurse Turner. He has not stated a claim against Sergeant Wood.

Nor has Mr. Griffin stated claims against these five defendants for not providing him with gauze for his cast. The complaint indicates HSA Fritter, Nurse Burrell, and Nurse Turner checked Mr. Griffin's cast on several occasions and decided gauze was not warranted. He has not pleaded facts from which it can plausibly be inferred these three defendants did not exercise their medical judgment when they assessed his cast and need for gauze. Additionally, to the extent Mr. Griffin asserts Dr. Marthakis and Sergeant Wood were deliberately indifferent when they refused to provide him with gauze, there is no indication in the complaint they were personally involved in the decisions about his cast. *Palmer*, 327 F.3d at 594. In sum, Mr. Griffin has not stated claims against these five defendants.

On May 9, 2022, Officer Kowar and another correctional officer escorted Mr. Griffin to the hospital for hernia surgery. ECF 1 at 7. After the surgery, the surgeon prescribed Percocet for Mr. Griffin's pain. *Id*. Dr. Martin also gave Officer Kowar Mr. Griffin's medical records to return to ISP. *Id*.

Upon returning to ISP, Officer Kowar accompanied Mr. Griffin to the medical station where Nurse Burrell, Nurse Irasema Block, Nurse Theresa Liedtke, and Sergeant Wood were working. *Id*. Mr. Griffin asked Nurse Burrell to let Dr. Marthakis know that the surgeon had prescribed Percocet and he needed it for his pain. *Id*. Nurse Burrell told Mr. Griffin that Dr. Marthakis would not prescribe the medication. *Id*. Mr. Griffin asked Nurse Burrell to note that in his medical record, but she said "no." *Id*. at 8. He then asked Nurse Burrell for her name and how to spell it. *Id*. After Nurse Burrell spelled her name, Mr. Griffin told her he would "get her together," which allegedly meant he would file complaints and grievances to "correct her deliberate indifference." *Id*. He asserts that Nurse Burrell, Nurse Block, Nurse Liedtke, Officer Kowar, and Sergeant Wood did not contact Dr. Marthakis to help him obtain Percocet or consult with a prison supervisor to get him pain medication. *Id*.

On May 10, 2022, Mr. Griffin received a disciplinary conduct report charging him with threatening. *Id*. He asserts that Nurse Burrell, Nurse Block, Nurse Liedtke, Sergeant Wood, and Officer Kowar contrived the report in retaliation for complaining about his medical care. *Id*. He states that, after HSA Fritter received the conduct report, noting he would not be given narcotic pain medication, she did nothing to help him obtain

6

medication. *Id*. As a result, he alleges he never received pain medication after his hernia surgery. *Id*.

Mr. Griffin has sued HSA Fritter, Dr. Marthakis, Nurse Burrell, Nurse Block, Nurse Liedtke, Sergeant Wood, and Officer Kowar alleging they disregarded his complaints of pain and failed to provide him with pain medication following his May 9, 2022 hernia surgery. *Id*. at 11. With regard to HSA Fritter, he has not alleged that she was personally involved in his medical care. *Palmer*, 327 F.3d at 594. Moreover, there is no general respondeat superior liability under 42 U.S.C. § 1983, and HSA Fritter cannot be held liable simply because she supervises the medical staff. *See Burks v. Raemisch*, 555 F.3d 592, 594-96 (7th Cir. 2009) ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."). Mr. Griffin has not stated a claim against HSA Fritter.

Nor has Mr. Griffin stated a claim against either Dr. Marthakis or Nurse Burrell. Though he asserts that Nurse Burrell told him Dr. Marthakis would not prescribe Percocet, and she would not note this in his medical record, other than this single interaction his complaint does not describe any other interaction with either of these two defendants and does not allege he asked them for pain medication following his hernia surgery. Thus, it cannot plausibly be inferred that Dr. Marthakis or Nurse Burrell were deliberately indifferent to his complaints of pain.

As to Nurse Block, Nurse Liedtke, Sergeant Wood, and Officer Kowar, he has not alleged they were personally involved in his medical care on May 9, 2022. *Palmer*, 327 F.3d at 594. Here, he states that Officer Kowar escorted him to the medical station and Nurse Block, Nurse Liedtke, and Sergeant Wood were working in the medical station

7

when he returned from the hospital. Though he asserts these four defendants did not contact Dr. Marthakis or a prison supervisor to help him get pain medication, he has not described his interaction with each defendant or alleged he asked them for help in obtaining medication. Thus, it cannot plausibly be inferred that he has stated claims for deliberate indifference against these defendants.

On May 11, 2022, Mr. Griffin was scheduled to have x-rays. ECF 1 at 9. When Officer Hullet and Officer Zaberl arrived at his cell to escort him to the medical station, he told them he was in pain from his surgery, was urinating and defecating blood, and had a swollen abdomen and swollen testicles. *Id*. Because of his condition, he could not fully dress himself and the officers refused to take him for x-rays. *Id*. Mr. Griffin asserts that the officers later lied saying he refused to get dressed and did nothing to help him get treatment for his pain. *Id*.

Mr. Griffin has sued Officer Hullet and Officer Zaberl alleging they were deliberately indifferent to his complaints of pain. *Id*. at 11. Though he asserts these officers disregarded his complaints of pain and would not help him obtain medication, he has not alleged he asked them for help in getting medical treatment. Mr. Griffin has not stated a claim here.

Last, Mr. Griffin states that, on May 18, 2022, Officer Adams told him he needed to go to the guard hall to pick up his legal mail. *Id*. at 9. Mr. Griffin explained he was in pain from his hernia surgery and Officer Adams should let his supervisors know that walking to the guard hall would cause him unnecessary pain. *Id*. This claim is unrelated to the Eighth Amendment claims he has asserted in this lawsuit. *George v. Smith*, 507 F.3d

8

605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits . . .."); s*ee also Owens v. Evans*, 878 F.3d 559, 566 (7th Cir. 2017). If he wishes to pursue his unrelated claim against Officer Adams, he must do so in a new lawsuit, which requires that he pay a filing fee. Therefore, Officer Adams will be dismissed.

This complaint does not state a claim for which relief can be granted. If he believes he can state a claim based on (and consistent with) the events described in this complaint, Mr. Griffin may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). When he prepares his amended complaint, he should explain in his own words what happened, when it happened, where it happened, who was involved, and how he was personally injured, providing as much detail as possible. For his convenience, the clerk will send Mr. Griffin a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form. After he properly completes that form addressing the issues raised in this order, he needs to send it to the court.

For these reasons, the court:

(1) DISMISSES Officer Adams and the claim against him without prejudice under Federal Rule of Civil Procedure 21;

(2) DIRECTS the clerk to place this cause number on a blank Pro Se 14 (INND Rev. 2/20) Prisoner Complaint form and send it to Virgil Eugene Griffin;

(3) GRANTS Virgil Eugene Griffin until **September 29, 2023**, to file an amended complaint; and

9

(4) CAUTIONS Virgil Eugene Griffin if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED.

August 31, 2023                              *s/ Damon R. Leichty*
                                             Judge, United States District Court