UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

VIRGIL EUGENE GRIFFIN,

  Plaintiff,

v.                                                    CAUSE NO. 3:22-CV-685 DRL

NANCY MARTHAKIS,

  Defendant.

OPINION AND ORDER

Virgil Eugene Griffin, a prisoner without a lawyer, is proceeding in this case against Dr. Nancy Marthakis "for providing him with constitutionally inadequate pain medication treatment following his hernia surgery on May 9, 2022, in violation of the Eighth Amendment[.]" ECF 18 at 7. Dr. Marthakis filed a motion for summary judgment. ECF 75. Mr. Griffin filed a response, and Dr. Marthakis filed a reply. ECF 87, 88. The summary judgment motion is now fully briefed.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278,

282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To be held liable for deliberate indifference to an inmate's medical needs, a medical professional must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Furthermore, a prisoner is not entitled to demand specific care, nor is he entitled to the "best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Where the defendants have provided some level of care for a prisoner's medical condition, to establish deliberate indifference the prisoner must show that "the defendants' responses to [his condition] were so plainly inappropriate as

to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). A mere disagreement with medical professionals about the appropriate treatment does not amount to an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003).

Dr. Marthakis tenders an affidavit and Mr. Griffin's medical records. On May 9, 2022, Mr. Griffin underwent a left inguinal hernia repair surgery at an outside facility. ECF 78-2 at 2; ECF 78-1 at 216-17. He returned to Indiana State Prison (ISP) later that day and was assessed by Nurse Jennifer Burrell. *Id.* Mr. Griffin told Nurse Burrell that she "better make sure he gets his Percocets." *Id.*[1] Nurse Burrell informed Mr. Griffin that Percocet is not prescribed within the Indiana Department of Corrections, and Mr. Griffin stated he would "catch [her] on the outside" and "whoop [her] ass into shape" if he didn't get Percocet. *Id.* Nurse Burrell felt threatened, ended the assessment, and dismissed Mr. Griffin back to his cell without any further orders. *Id.* Dr. Marthakis attests that Percocet is problematic in a correctional setting because it has the potential for misuse and diversion, which can lead to serious health, safety, and security risks. ECF 78-2 at 3-4. Percocet is considered a "last resort" medication, and Mr. Griffin's medical condition did not rise to the level of requiring such a medication. *Id.* at 4.

On May 11, 2022, a correctional officer went to Mr. Griffin's dorm to escort him to the medical unit for an x-ray following his hernia surgery, but Mr. Griffin refused

---

[1] Mr. Griffin claims he was prescribed Percocet by the outside physician following the surgery. ECF 87-2 at 2; ECF 87 at 6. There are no documents in the medical record indicating Mr. Griffin ever was prescribed Percocet but, because the defendants do not dispute Mr. Griffin's assertion he was prescribed Percocet, the court accepts it as undisputed.

numerous orders to get dressed and repeatedly exposed himself to correctional officers. ECF 78-2 at 2; ECF 78-1 at 218-19.[2] Mr. Griffin was left in his cell, and medical staff contacted his aunt regarding his refusal of care. *Id.*; ECF 78-1 at 220.

On May 26, 2022, Mr. Griffin was seen by an offsite specialist for a follow-up of his hernia repair surgery. ECF 78-1 at 228-29, 232.

On June 5, 2022, Mr. Griffin submitted a Healthcare Request Form (HCRF) requesting pain medication and a hernia brace. ECF 78-2 at 3; ECF 78-1 at 535. Dr. Marthakis attests this was Mr. Griffin's first documented request for any medical treatment related to his hernia surgery after his threatening remarks to Nurse Burrell on May 9. ECF 78-2 at 3.

On June 7, 2022, Nurse Diane Thews evaluated Mr. Griffin in response to his HCRF, and Mr. Griffin reported he still had some pain but was improving. ECF 78-2 at 3; ECF 78-1 at 230-32. Nurse Thews prescribed him extra-strength Tylenol. *Id.*

Here, it is undisputed that (1) Mr. Griffin underwent hernia surgery on May 9, 2022; (2) upon returning to ISP, Mr. Griffin requested Percocet from Nurse Burrell, Nurse Burrell informed him Percocet would not be prescribed at ISP, and Nurse Burrell ended the assessment without providing any pain medication after Mr. Griffin threatened her; and (3) Mr. Griffin submitted a HCRF on June 5, 2022, requesting pain medication, and was prescribed extra-strength Tylenol two days later. Thus, the undisputed facts show Mr. Griffin went nearly a month without pain medication following his hernia surgery,

---

[2] Mr. Griffin admits he refused to get dressed but says he did so because he was in pain and getting dressed would have placed pressure on his wound. ECF 87 at 6.

4

but was promptly prescribed pain medication once he submitted a HCRF. Mr. Griffin attests that, during the period he went without pain medication, he experienced pain and swelling in his abdomen and groin. ECF 87-2 at 2.

Dr. Marthakis argues summary judgment is warranted in her favor because she was not personally involved in or responsible for any constitutional violation. ECF 76 at 6; ECF 88 at 2-3. She attests she did not personally examine or provide any treatment to Mr. Griffin following his hernia surgery and had no personal knowledge of any treatment recommendations related to Mr. Griffin. ECF 78-2 at 3.

42 U.S.C. § 1983 requires a plaintiff to show more than just a violation of a constitutional right. To recover damages from a defendant, he must also prove that defendant was personally involved in the violation. *See Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012) ("§ 1983 liability is premised on the wrongdoer's personal responsibility"); *see also Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (a defendant cannot be liable without "a showing of direct responsibility for the improper action"). This is because there is no general *respondeat superior* liability under § 1983. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). As such, "public employees are responsible for their own misdeeds but not for anyone else's." *Id.* "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). As this circuit has explained:

> The doctrine of *respondeat superior* cannot be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights. Supervisory liability will be found, however, if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it. That is, to be liable for the conduct of subordinates, a supervisor

5

> must be personally involved in that conduct. Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable. The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference.

*Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citations and internal quotation marks omitted).

Here, it is undisputed Dr. Marthakis never examined or provided any treatment to Mr. Griffin related to his hernia surgery. It was Nurse Burrell who assessed Mr. Griffin following his surgery, informed him he would not be receiving Percocet, and ended the assessment without providing any alternative pain medications after Mr. Griffin threatened her. And it was a correctional officer who reported Mr. Griffin was refusing treatment on May 11 after he refused to get dressed in his cell. There is no evidence Dr. Marthakis was involved in or aware of either of these interactions.

In his summary judgment response, Mr. Griffin argues Dr. Marthakis was personally involved for three reasons. First, Mr. Griffin argues Dr. Marthakis "was the responsible authority and ultimate decision maker with continuing knowledge of plaintiff Griffin's need for and reception of surgery." ECF 87 at 7. But this argument amounts to an assertion that Dr. Marthakis should be held vicariously liable for the conduct of her subordinates, which is not permitted under § 1983. *See Chavez*, 251 F.3d at 651. Second, Mr. Griffin argues Dr. Marthakis was "aware that the practice of the facility was to deny patients medication which the hernia specialist surgeon prescribed" and was "aware that plaintiff Griffin was at least protesting the quality of care and lack of pain

6

medication he was receiving." ECF 87 at 7. But Mr. Griffin does not provide any evidence[3] to support this assertion or explain how he has any personal knowledge regarding what Dr. Marthakis knew, and his mere speculation that Dr. Marthakis knew of his need for pain medication is insufficient to show she was personally involved. *See Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006) ("speculation or conjecture will not defeat a summary judgment motion"); Fed. R. Civ. P. 56(c)(4) (an affidavit "must be made on personal knowledge" and "show that the [affiant] is competent to testify on the matters stated"). And third, Mr. Griffin argues he made oral complaints and filed HCRF and grievance forms about the pain he was experiencing. ECF 87-2 at 2. But there's no evidence any of these oral or written complaints were presented to or known by Dr. Marthakis. Rather, it is undisputed Dr. Marthakis never examined or assessed Mr. Griffin following his hernia surgery (ECF 78-2 at 3); the grievance forms provided by Mr. Griffin contain no indication they addressed or were presented to Dr. Marthakis (ECF 87-1 at 19, 26, 30-32, 39, 44-45);[4] and the only HCRF Mr. Griffin provides is his June 5, 2022 HCRF for which he was assessed by Nurse Thews and prescribed extra-strength Tylenol (ECF 87-1 at 33). Thus, none of this evidence shows Dr. Marthakis had any personal involvement or knowledge of Mr. Griffin's treatment following his hernia surgery.

---

[3] Mr. Griffin cites to all of his exhibits in support of this assertion. *See* ECF 87 at 7 (citing to his entire affidavit and all 31 of his exhibits). None of these exhibits shows Dr. Marthakis was personally involved in his treatment following his hernia surgery or that she had any personal knowledge of his need for pain medication.

[4] The grievance forms indicate the Grievance Specialist spoke with Nurse Fritter, not Dr. Marthakis, regarding Mr. Griffin's complaints. ECF 87-1 at 44.

Accordingly, the court does not reach the issue of whether Mr. Griffin was denied constitutionally adequate medical care, as there is no evidence Dr. Marthakis was personally involved in Mr. Griffin's treatment. Dr. Marthakis attests she did not personally examine or provide any treatment to Mr. Griffin following his hernia surgery and had no personal knowledge of any treatment recommendations, and Mr. Griffin provides no evidence to dispute this attestation aside from his own speculation, which is insufficient to create a genuine dispute. *See Trade Fin. Partners*, 573 F.3d at 407 ("inferences relying on mere speculation or conjecture will not suffice" to create a genuine dispute). Mr. Griffin does not point to any evidence that Dr. Marthakis examined him, denied him medication, received any kind of request from him, or issued any instructions or medical orders related to his treatment after his hernia surgery. Because there is no evidence by which a reasonable jury could conclude Dr. Marthakis was personally responsible for violating Mr. Griffin's Eighth Amendment rights, summary judgment is warranted in favor of Dr. Marthakis.

For these reasons, the court:

(1) GRANTS Dr. Marthakis' summary judgment motion (ECF 75); and

(2) DIRECTS the clerk to enter judgment in favor of Dr. Marthakis and against Virgil Eugene Griffin and to close this case.

SO ORDERED.

January 29, 2026                                                *s/ Damon R. Leichty*
                                                                 Judge, United States District Court